**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Shenzhen Chengront Technology Co., Ltd,<br><br>    Plaintiff<br><br>    v.<br><br>Besign Direct and Shenzhen JianYi KeJi Youxian Gongsi<br><br>    Defendant | Case No.<br><br>JURY TRIAL DEMANDED |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S *EX PARTE* MOTION FOR TEMPORARY RESTRAINING ORDER, INCLUDING A TEMPORARY INJUNCTION AGAINST INFRINGEMENT, ORDER AUTHORIZING BIFURCATED AND ALTERNATIVE SERVICE OF PROCESS BY ELECTRONIC MEANS, EXPEDITED DISCOVERY, AND PRELIMINARY INJUNCTION**

**J. ZHANG AND ASSOCIATES, P.C.**
JIYUAN ZHANG, ESQ.
136-20 38TH AVENUE, STE 11G
FLUSHING, NY 11354
Tel: (607) 948-3339
Fax: (917) 341-7180
CONTACT@JZHANGLAWS.COM

***Attorneys for Plaintiff***
***Shenzhen Chengront Technology Co., Ltd***

1

## I.    INTRODUCTION

Pursuant to and in accordance with the Federal Rules of Civil Procedure, Plaintiff submits this memorandum of law in support of its *ex parte* Application for a Temporary Restraining Order ("TRO") in light of Defendants' intentional and willful offering for sale and/or sale the Besign Lapstop Stand on the Besign Amazon Storefront. In support of this application, Plaintiff relies on the Complaint and supporting Exhibits (Dkt 1) ("Complaint"), the Declaration of Affidavit of Zhigang Liu ("Liu Aff.") , and the Declaration of Jiyuan Zhang, executed November 27, 2022, plus supporting exhibits, and submitted hereto ("Zhang Decl.").

Amazon is an online marketplace platform that allows manufacturers, wholesalers and other third-party merchants, like Defendants, to advertise, offer for sale, sell, distribute and ship their wholesale and retail products originating from China directly to consumers across the world and specifically to consumers residing in the U.S., including New York.

Defendants are businesses, who, upon information and belief, are located in China but conduct business in the U.S. and other countries by means of its Besign Amazon Storefront. Zhang Decl. ¶ 3.  Through its Besign Amazon Storefront, Defendants offer for sale and/or sell consumer products, including Besign Lapstop Stand, and market, distribute and ship such products to consumers throughout the world, including New York. *Id*.

Without Plaintiff's authorization or consent, Defendant was and/or currently is manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling Besign Lapstop Stand to consumers located in the U.S., including New York, through its on the Besign Amazon Storefront. See, Complaint, ¶¶ 9-10; Zhang Decl. ¶¶ 8-10.  Defendant's aforementioned actions have caused and will continue to cause irreparable harm to Plaintiff, including the loss of market share.

Plaintiff's request for *ex parte* relief is particularly necessary because if Defendant receives notice of this Lawsuit, it is highly likely that it will transfer, conceal and/or destroy 1) the Besign Lapstop Stand, 2) the means of making or obtaining the Besign Lapstop Stand, 3) business records and 4) any and all other evidence relating to their infringing activities. *See* Zhang Decl., ¶ 6.

Moreover, they will likely hide or dispose of their assets. *Id*. In light of the foregoing, and considering that it typically takes noticed financial institutions and/or Amazon a minimum of five (5) days to locate, attach and freeze storefronts like the Besign Amazon Storefront, Plaintiff respectfully requests that the Court order bifurcated service specifically allowing enough time for the Financial Institutions and/or Third Party Service Providers to comply with the TRO before ordering service on Defendant.

Courts grant *ex parte* applications for relief in similar matters and Plaintiff requests that the Court grant its Application.

## II.    ARGUMENT

### A.    THIS COURT HAS PERSONAL JURISDICTION OVER DEFENDANTS

Determining personal jurisdiction over a foreign defendant in a federal question case requires a two-step inquiry. First, courts must look to the law of the forum state to determine whether personal jurisdiction will lie. *Licci v. Lebanese Canadian Bank*, 732 F.3d 161, 168 (2d Cir. 2013) (citing *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 242 (2d Cir. 2007)).

Second, if jurisdiction lies, the court then considers whether the district court's exercise of personal jurisdiction over a foreign defendant comports with due process protections established under the United States Constitution. *See id*.; *see also, Int'l Shoe Co. v. Washington*,

326 U.S. 310, 316 (1945).  As alleged herein, Defendants' unlawful infringing activities subject it to long-arm jurisdiction in New York under N.Y. C.P.L.R. § 302(a)(1).

Furthermore, New York's exercise of jurisdiction over Defendants thereunder comports with due process.

### 1.      Defendants are Subject to Personal Jurisdiction Under N.Y. C.P.L.R. § 302(a)(1)

Under § 302(a)(1), there are two requirements that must be met to establish personal jurisdiction: "(1) [t]he defendant must have transacted business within the state; and (2) the claim asserted must arise from that business activity." *Licci*, 732 F.3d at 168 (quoting *Solé Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 103 (2d Cir. 2006)). In applying the test for the "transacts business" prong of § 302(a)(1), "New York decisions … tend to conflate the long-arm statutory and constitutional analyses by focusing on the constitutional standard," ergo, "a defendant need not be physically present in New York to transact business there within the meaning of [this first prong]," so long as the defendant has engaged in "purposeful activity," for example, "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 169-71 (2d Cir. 2010) (quoting *Best Van Lines, Inc.*, 490 F.3d at 246-247) (internal quotation marks omitted).

The second prong of § 302(a)(1) requires an "articulable nexus or substantial relationship between the business transaction and the claim asserted," however, "a causal relationship between the business transaction and the claim asserted" is not required. *Gucci Am., Inc. v. Weixing Li*, 135 F. Supp. 3d 87, 93 (S.D.N.Y. 2015) (citations omitted) (internal citations omitted) (internal quotation marks omitted).  Rather, it is sufficient that "the latter is not completely unmoored from the former." *Id.* In determining whether a party has "transacted

business," New York courts must look at the totality of the circumstances concerning the party's interactions with, and activities within, the state. *Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549, 565 (S.D.N.Y. 2000).  Whether the exercise of personal jurisdiction is permissible in the context of Internet activity is "directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet." *Id.*

Courts in this Circuit have regularly conferred personal jurisdiction on a given defendant based on that defendant's operation of a fully interactive website through which consumers can access the site from anywhere and purchase products, as is the case with the Besign Amazon Storefront, and allow for customers all over the world to communicate with Defendants and view and purchase products, including the Besign Laptop Stand, as demonstrated by the checkout pages and purchase of Infringing Products completed by Mr. Zhang. *See* Zhang Decl. ¶¶ 8-10. see also *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 170, 170 (2d Cir. 2010).

This Circuit has exercised jurisdiction over defendants under § 302(a)(1) where such defendants regularly offer for sale and sell goods through online marketplaces, "even though Defendants do not control their storefront or its interactivity to the same extent that they control their own highly interactive website." *Lifeguard Licensing Corp. v. Ann Arbor T-Shirt Co., LLC*, No. 15 Civ. 8459 (LGS), 2016 U.S. Dist. LEXIS 89149 *7 (S.D.N.Y. July 8, 2016) (quoting *EnviroCare Techs., LLC v. Simanovsky*, No. 11-CV-3458(JS)(ETB), 2012 U.S. Dist. LEXIS 78088 *8 (E.D.N.Y. June 4, 2012). Jurisdiction is proper "for internet sellers who use an internet storefront like Amazon," when the Internet sellers are "commercial vendors who use it 'as a means for establishing regular business with a remote forum.'" *Id.* at *8.  In *Lifeguard Licensing Corp.*, Judge Schofield held that a "website that does more than provide information about a product and allows customers to purchase goods online, is a 'highly interactive website, 'which

may provide a basis for personal jurisdiction under CPLR § 302(a)." *Id*. at \*7. (citing *Chloe*, 616 F.3d at 170 and *Grand v. Schwartz*, No. 15 Civ. 8779, 2016 U.S. Dist. LEXIS 61606 at \*3 (S.D.N.Y. May 1, 2016) (holding that interactive commercial websites provides support for jurisdiction pursuant to CPLR § 302(a)(1))). Moreover, "[r]egularly offering and selling goods via an online marketplace such as Amazon.com can provide a basis for personal jurisdiction under CPLR § 302(a), even though Defendants do not control their Amazon.com 'storefront 'or its interactivity to the same extent that they control their own highly interactive website." *Id*. at \*8. If a defendant wishes to operate an interactive website accessible in New York, there is no inequity in subjecting [that defendant] to personal jurisdiction here. If [a defendant] does not want its website to subject it to personal jurisdiction here, it is free to set up a passive website that does not enable [that defendant] to transact business in New York. *Thomas Publ'g Co. v. Indus. Quick Search*, 237 F. Supp. 2d 489, 492 (S.D.N.Y. 2002).[1]

---

[1] This Court have repeatedly found personal jurisdiction over defendants based in China who are operating similar online marketplace platforms, such as Alibaba, AliExpress, Wish and eBay. See, e.g., *Allstar Marketing Group, LLC v. 24x7, et al*., No. 18-cv-9043-JSR (S.D.N.Y. Oct. 3, 2018); *Ideavillage Products Corp. v. 666668, et al.*, No. 18-cv-6850-CM (S.D.N.Y. July 31, 2018); *William Mark Corporation v. 1104520362, et al*., No. 18-cv-6715-PAC (S.D.N.Y. July 26, 2018); *Ideavillage Products Corp. v. 207058772, et al*., No. 18-cv-6512-VM (S.D.N.Y. July 19, 2018); *Ideavillage Products Corp. v. 29shyans2012, et al*., No. 18-cv-6266-AT (S.D.N.Y. July 11, 2018); *Off-White v. 6014350 et al*., No. 18-cv-5322-GBD (S.D.N.Y. June 13, 2018); *Intenze Products, Inc. v. 1586, et al.*, No. 18-cv-4611-RWS (S.D.N.Y. May 24, 2018); *William Mark Corporation v. 1&cc, et al*., No. 18-cv-3889-RA (S.D.N.Y. May 2, 2018); *WOW Virtual Reality, Inc. v. Bienbest, et al.*, No. 18-cv-3305-VEC (S.D.N.Y. April 16, 2018); I*deavillage Products Corp. v. abc789456, et al.*, No. 18-cv-2962-NRB (S.D.N.Y. April 11, 2018); *Ideavillage Products Corp. v. Aarhus, et al.,* No. 18-cv-2739-JGK (S.D.N.Y. April 11, 2018); *Moose Toys Pty Ltd. et al., v. 963, et al.*, No. 18-cv-2187-VEC (S.D.N.Y. April 2, 2018); *Off-White, LLC v. A445995685, et al.*, No. 18-cv-2009-LGS (S.D.N.Y. March 27, 2018); *Spin Master Ltd. and Spin Master, Inc. v. 158, et al.*, No. 18-cv-1774-PAE (Feb. 27, 2018); *JLM Couture, Inc. v. Aimibridal, et al.*, No. 18-cv-1565-JMF (S.D.N.Y. Feb. 21, 2018); *Spin Master Ltd. and Spin Master, Inc. v. Alisy, et al*., No. 18-cv-543-PGG (S.D.N.Y. Jan. 22, 2018); *WowWee Group Limited, et al. v. Meirly, et al.*, No. 18-cv-706-AJN (S.D.N.Y. Jan. 26, 2018); I*deavillage Products Corp. v. Dongguan Shipai Loofah Sponge Commodity Factory, et al.*, No. 18-cv-901-PGG (S.D.N.Y. Feb. 1, 2018).

In *EnviroCare Techs.*, the court held "if a website is interactive and allows a buyer in New York to submit an order online, courts typically find that the website operator is 'transacting business 'in New York and is therefore subject to the court's jurisdiction." 2012 U.S. Dist. LEXIS 78088 at *9 (citing *Hsin Ten Enter. USA, Inc. v. Clark Enters.*, 138 F. Supp. 2d 449, 456 (S.D.N.Y. 2000) ("Generally, an interactive website supports a finding of personal jurisdiction over the defendant.")) Similarly, in *Chloe*, the Second Circuit found that while the single act of shipping a counterfeit product might be sufficient to subject him to the jurisdiction of a New York court, it did not need to delve into such an inquiry as the defendant "operated a highly interactive website offering [infringing products] for sale to New York consumers." *Chloe*, 616 F.3d 158, 170.

In some circumstances, courts in the Second Circuit have found that "[t]he offering for sale of even one copy of an allegedly infringing item, even if no sale results, is sufficient to give personal jurisdiction over the alleged infringer under N.Y. CPLR § 302(a), subd. 1, 2 and 3." *Cartier v. Seah LLC*, 598 F. Supp. 2d 422, 425 (S.D.N.Y. 2009). In *McGraw-Hill Global Educ. Holdings LLC v. Khan*, 323 F. Supp. 3d 488 (S.D.N.Y. 2018), the Court found personal jurisdiction where the defendant's website was "interactive" and allowed a buyer to submit an order online. *McGraw-Hill cited to Audiovox Corp v. S. China Enter., Inc.*, 2012 U.S. Dist. LEXIS 104656 at *3 (S.D.N.Y. Jul. 26, 2012) for the proposition that "if a website is interactive and allows a buyer in New York to submit an order online, courts typically find that the website operator is 'transacting business 'in New York and is therefore subject to the court's jurisdiction." *See also, Hsin Ten Enter.*, 138 F. Supp. 2d 449, 456 ("Generally, an interactive website supports a finding of personal jurisdiction over the defendant.").

Here, Defendants operate interactive the Besign Direct Storefront on Amazon, allowing New York consumers to inquire and communicate with Defendants, purchase goods, including Infringing Products, by and through Defendants' listings, and upon completion of a sale, ship goods to New York. Defendants have chosen to sell the Besign Laptop Stand, among many other products, on the Besign Direct Storefront. See, Complaint Ex. 3. (Order and Delivery Confirmation) This supports a finding that Defendants intentionally use Amazon" as a means for establishing regular business with a remote forum." *EnviroCare Techs., LLC*, 2012 U.S. Dist. LEXIS 78088 at *10 (quoting *Boschetto v. Hansing*, 539 F.3d 1011, 1019 (9th Cir. 2008)).

Moreover, because Defendant offers for sale and/is selling Infringing Products at significantly below-market prices [*See* Liu Aff. ¶ 13] coupled with the fact that most of its User Account reflects multiple sales to consumers across the world, including repeat sales to consumers in the U.S., confirms that Defendants are sophisticated sellers operating commercial businesses through Amazon, such that they are subject to jurisdiction. *Id*. at *10.

It is highly likely that Defendant has shipped Infringing Products to consumers in New York based on the following: 1) Plaintiff's counsel has completed a checkout page for an order of Infringing Products from every Defendant through an account associated with the New York Address, 2) Plaintiff's counsel purchased an Infringing Product 3) and Defendant shipped the Infringing Product to this forum. Cite. *See* Zhang Decl. ¶ 8-10.

Nevertheless, whether a defendant physically shipped Infringing Products into New York is not determinative of whether personal jurisdiction exists, as courts in this Circuit examine a given defendant's online interactions with consumers in considering whether a particular defendant has transacted business in the forum state under § 302(a)(1). *Rolex Watch, U.S.A., Inc. v. Pharel*, 2011 U.S. Dist. LEXIS 32249, at * 6 (E.D.N.Y. Mar. 11, 2011).

Plaintiff and Plaintiff's counsel viewed Defendant's Infringing Products via their online User Accounts and Merchant Storefronts on Amazon. Plaintiff's counsel then completed checkout pages for Counterfeit Products by providing the New York Address as the shipping address.[2] *See* Zhang Dec., ¶¶ 8-10; Zhang Dec., Ex. C.  Further, Plaintiff's counsel purchased Infringing Products from the check out page into New York.  *Id*.  Thus, Defendants' sophisticated commercial operations, specifically including its offering for sale and/or selling of Infringing Products through their highly interactive User Accounts and Merchant Storefronts on Amazon, Plaintiff counsel's completion of checkout pages with the New York Address, the subsequent purchase of Infringing Products, along with Defendant's own representations on their Merchant Storefront that they ship Infringing Products to the U.S., including New York, unequivocally establishes that Defendant conducts business within this District and the claims in this suit arise from Defendants' business dealings and transactions with consumers in New York.[3]

        **2.**      **Exercising Personal Jurisdiction Over Defendant Comports with Due Process**

---

[2] Under case law of the Second Circuit, when analyzing personal jurisdiction in the Internet context,  traditional statutory and constitutional principles remain the touchstone of the inquiry", and while a website's interactivity,  may be useful" for analyzing personal jurisdiction  insofar as it helps to decide whether the defendant 'transacts any business' in New York,'" … "it does not amount to a separate framework for analyzing internet-based jurisdiction." *Best Van Lines, Inc*., 490 F.3d at 252 (quoting *Best Van Lines, Inc. v. Walker*, No. 03 Civ. 6585 (GEL), 2004 U.S. Dist. LEXIS 7830, at *9 (S.D.N.Y. May 4, 2004) (internal citation omitted)).

[3] Plaintiff respectfully submits that the Court has jurisdiction pursuant to Fed. R. Civ. P. 4(k)(2), which  provides for jurisdiction over a defendant if a claim arises under federal law, if the defendant is not subject to jurisdiction of the courts of general jurisdiction of any state, and if the exercise of jurisdiction is consistent with the Constitution and laws of the United States." L*echner v. Marco-Domo Internationales Interieur GmbH*, No. 03 Civ. 5664 (JGK), 2005 U.S. Dist. LEXIS 4022, *8 (S.D.N.Y. Mar. 10, 2005).

Asserting personal jurisdiction over Defendants also comports with the Due Process Clause of the U.S. Constitution, as Defendant has" certain minimum contacts ... such that maintenance of th[is] suit does not offend 'traditional notions of fair play and substantial justice.'" *Calder v. Jones*, 465 U.S. 783, 788 (1984) (quoting Milliken v. Meyer, 311 U.S. 457 (1940)).  Defendants intentionally directed activity towards the New York market, thereby purposefully availing themselves of "the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (U.S. 1985); *see also Best Van Lines, Inc.*, 490 F.3d at 243. *See* Zhang Decl. ¶¶ 8-10.

Moreover, "as a practical matter, the Due Process Clause permits the exercise of jurisdiction in a broader range of circumstances of N.Y. C.P.L.R. § 302, and a foreign defendant meeting the standards of § 302 will satisfy the due process standard." *Energy Brands Inc. v. Spiritual Brands, Inc.*, 571 F. Supp. 2d 458, 469 (S.D.N.Y. 2008). Accordingly, Plaintiff respectfully submit that this Court has personal jurisdiction over Defendants in this action.

## B.   PLAINTIFFS ARE ENTITLED TO AN EX PARTE TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

An *ex parte* order is essential to prevent immediate and irreparable injury to Plaintiff. A temporary restraining order may be granted without written or oral notice to the opposing party or that party's counsel where "it clearly appears from the specific facts shown by affidavit . . . that immediate and irreparable injury, loss or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition." Fed. R. Civ. P. 65(b).

A patentee's statutory basis for injunctive relief is codified at 35 U.S.C. § 283: "The several courts having jurisdiction of cases under this title may grant injunctions in accordance

with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable." One of the rights secured by a patent is the right to exclude others: "Every patent shall contain … a grant to the patentee … of the right to exclude others from making, using, offering for sale, or selling the invention throughout the United States or importing the invention into the United States, and, if the invention is a process, of the right to exclude others from using, offering for sale or selling throughout the United States, or importing into the United States, products made by that process …." 35 U.S.C. § 154(a)(1); see also *Id*. § 261 ("Subject to the provisions of this title, patents shall have the attributes of personal property.")

"To obtain a preliminary injunction, a plaintiff must establish: '(1) the likelihood of irreparable injury in the absence of such an injunction, and (2) either (a) likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation plus a balance of hardships tipping decidedly 'in its favor.'" *Louis Vuitton Malletier v. Burlington Coat Factory Warehouse Corp*., 426 F.3d 532, 537 (2d Cir. 2005) (quoting *Federal Express Corp. v. Federal Espresso, Inc.*, 201 F.3d 168, 173 (2d Cir. 2000)).  The "standards which govern consideration of an application for a temporary restraining order… are the same standards s those which govern a preliminary injunction." *Local 1814, Int'l Longshoremen's Ass'n v. N.Y. Shipping Ass'n, Inc.*, 965 F.2d 1224, 1228 (2d Cir. 1992).  Plaintiffs meet the standard for a preliminary injunction and the Court should enter a temporary restraining order.

### 1.      Plaintiff is Likely to Prevail on Its Patent Infringement Claim

For a patentee to establish that he is likely to succeed on the merits, he must demonstrate that he will likely prove infringement of one or more claims of the patents-in-suit, and that at

least one of those same allegedly infringed claims will also likely withstand the validity challenges presented by the accused infringer. *AstraZeneca LP v. Apotex*, Inc., 633 F.3d 1042, 1050 (Fed. Cir. 2010), citing Amazon.com, 239 F.3d at 1351.

Here, Plaintiff has a valid patent.

Likewise, the accused product is well within the scope of the claimed invention. Infringement for design patents is according to the ordinary observer test. *Egyptian Goddess, Inc. v. Swisa, Inc*., 543 F.3d 665 (Fed. Cir. 2008). The ordinary observer test requires one to view the differences between the accused design and the patented design in the context of the prior art. Id. The attention of the hypothetical ordinary observer will be drawn to those aspects of the claimed design that differ from the prior art. In applying the ordinary observer test, a court should view the two designs through the eyes of an observer familiar with the prior art. *Id*. at 677,

The following is the claimed image from the '399 patent.



The following is the accused infringing device:



This is the device from US D893,499 to Kirkpatrick.



This is the device from US D882,580 to Si.



From 861,002 to Bergeron-Mirsky.



With the above prior art in mind, the point of novelty for the claimed device are several fold: (1) the single, adjustable support column; (2) a rectangular support base with a large rectangular open area; and (3) two opposed flanged holders for the electronic device.

All of these claimed points of novelty are utilized by the accused device. In fact, the accused device is effectively identical to the device claimed by the '399 patent. This should not be surprising since they took the design from the Plaintiff.

As for validity, the listing on Amazon was created roughly two weeks before the filing date of the '399 patent. However, Defendant derived this device from Plaintiff, so this event cannot be used to invalidate the '399 patent.

### 2.      Plaintiffs will be irreparably harmed without a preliminary injunction

Defendants, who, upon information and belief, are located in China and operate its businesses exclusively over the Internet, knowingly and willfully offers for sale and/or sell the Besign Laptop Stand through the Besign Amazon Storefront. The covert nature of Defendant and its infringing activities make any order other than a preliminary injunction an exercise in futility. The immediate and irreparable harm to Plaintiff's business and reputation, greatly outweighs the harm to Defendant's interests in continuing to offer for sale and sells Infringing Products.

### C.      PLAINTIFFS ARE ENTITLED TO AN ORDER 1) PREVENTING THE FRAUDULENT TRANSFER OF ASSETS AND 2) FREEZING DEFENDANTS ' AMAZON STOREFRONT

### 1.      Defendant's Assets Must be Frozen

Considering the nature of Defendants' infringing product, and Plaintiff's showing that they have a high likelihood of succeeding on the merits of their claims, Plaintiff will be entitled to an equitable accounting of Defendants' profits from their sales of Infringing Products.

Plaintiff's request for an asset freeze order granting Plaintiff information regarding the location of Defendant's Assets, the attachment of Defendants' Assets and an injunction

preventing the transfer from or to Defendant's Financial Accounts by the Financial Institutions and Third Party Service Providers is both necessary and appropriate, and is within this Court's discretion to preserve Plaintiffs 'right to the relief sought in the Complaint. District courts have "authority to freeze those assets which could [be] used to satisfy an equitable award of profits." *North Face Apparel Corp. v. TC Fashions, Inc.*, 2006 U.S. Dist. LEXIS 14226, at *10 (S.D.N.Y. Mar. 30, 2006) (internal citation omitted).  In doing so, a court "may exempt any particular assets from the freeze on the ground that they [are] not linked to the profits of allegedly illegal activity." *Id*. at *11.  The onus is on "the party seeking relief [from such asset freeze] to 'present documentary proof'" that its profits are not from such illegal activity. *Id*.

An asset freeze in the instant matter is unquestionably warranted because Defendants, who are foreign individuals and/or entities based in China, are manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling Infringing Products to U.S. consumers solely via the Internet, and accepting payment for such Infringing Products in U.S. Dollars through Financial Institutions, thereby causing irreparable harm to Plaintiffs in the form of lost sales, loss of market share, and loss of control of retailers and consumers, and can, and most certainly have the incentive to, transfer and hide their ill-gotten funds if their assets are not frozen.

Therefore, Plaintiffs respectfully submit that this Court should exercise its inherent equitable power and freeze Defendants 'Assets and Financial Accounts for the purpose of preserving Defendants 'funds and ensuring that a meaningful accounting of their profits can be made.

### 2.        The Besign Amazon Storefront Must Be Frozen

A temporary restraining order which, in part, restrains Amazon from providing services to the Besign Amazon Storefront is warranted and necessary because the continued offering for sale and/or sale of the Besign Laptop Stand on its Amazon Storefronts will result in immediate and irreparable injury to Plaintiffs. *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 126 (2d Cir. 2014); *AW Licensing, LLC v. Bao,* No. 15-CV-1373, 2015 U.S. Dist. LEXIS 177101, at *3 (S.D.N.Y. Apr. 1, 2015).

**D.     PLAINTIFFS ARE ENTITLED TO AN ORDER AUTHORIZING BIFURCATED AND ALTERNATIVE SERVICE OF PROCESS BY ELECTRONIC MEANS**

Fed. R. Civ. P. (4) governs service on Defendant in the instant matter since, upon information and belief, they are located in China. While Defendant operates sophisticated commercial businesses, they are limited to correspondence by email and communications otherwise transmitted over the Internet. Plaintiff therefore respectfully requests that this Court issue an order granting it permission to serve the Defendant via the following combination of electronic methods via electronic mail.

Plaintiffs may serve international defendants pursuant to Fed. R. Civ. P. 4(f)(3), which enables a court to grant an alternative method of service so long as it: "(1) is not prohibited by international agreement; and (2) comports with constitutional notions of due process." *SEC v. Anticevic*, No. 05 CV 6991 (KMW), 2009 U.S. Dist. LEXIS 11480, at *7 (S.D.N.Y. Feb. 8, 2009). Notably, "[s]ervice under subsection [4(f)] (3) is neither a last resort nor extraordinary relief.  It is merely one means among several which enables service of process on an international defendant." *Sulzer Mixpac AG v. Medenstar Indus. Co.*, 312 F.R.D. 329, 330 (S.D.N.Y. 2015).

"The decision whether to allow alternative methods of serving process under Rule 4(f)(3) is committed to the sound discretion of the district court." *Id.*

Pursuant to Fed. R. Civ. P (4)(1), service may be affected "by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by The Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents" ("Hague Convention").  Although China is a signatory to it, the Hague Convention "shall not apply where the address of the person to be served with the document is not known."  *See* Hague Convention, November 15, 1965, Article 1.  Moreover, despite China's objection to service by postal channels under Article 10, District Courts in this Circuit have held that such objection does not include service by email and further, that service by email is not prohibited by any international agreement. *Sulzer Mixpac AG*, 312 F.R.D. at 332.

Service on Defendants via e-mail means comports with due process as it is "reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 309 (1950).  The bar is clearly met where, as here, the Defendants engaged in online business and regularly communicated with customers through email. *Mattel, Inc. v. Animefunstore, et al.*, 18 Civ. 8824 (LAP) (Dkt. 81) (S.D.N.Y. May 1, 2020); *see also, Sulzer*, 312 F.R.D. at 332 (noting that service through email was appropriate where the "email address in question is listed prominently on [defendant's internet homepage…[,] [the defendant] presumably relies at least partially on contact through [its email] to conduct overseas business, and it is reasonable to expect [defendant] to learn of the suit against it through this email address.").

Moreover, service via the Hague would not be the means most reasonably calculated to timely apprise Defendant of the TRO and this lawsuit.[4]  Because service via the Hague can take many months to complete, and the relief sought by Plaintiffs herein is urgent, Plaintiffs respectfully submit that alternative service is necessary and appropriate here. Otherwise, if Plaintiffs serve Defendants via the Hague, Defendants would not receive notice until months from now, at the earliest, at which time the TRO will have expired, and Defendants will have the opportunity to continue their infringing sales causing further irreparable harm to Plaintiff.

There is also the possibility of discovering, months to a year from now, that the address listed with the USPTO were not accurate, and Plaintiffs would be required to start the process over again. Courts in this Circuit have that "the length of time required for service under the Hague Convention, approximately six to eight months…may unnecessarily delay [a] case." *In re GLG Life Tech Corp. Sec. Litig*., 287 F.R.D. 262, 266 (S.D.N.Y. 2012) (internal citations omitted).

"Courts have frequently cited delays in service under the Hague Convention as supporting an order of alternative service under Rule 4(f)(3). *Id*. (citing *Brown v. China Integrated Energy, Inc.,* 285 F.R.D. 560 (C.D. Cal. Jul. 17, 2012) (ordering alternative service where service under the Hague Convention would take four to six months); see also *Tevra*

---

[4] Frederick S. Longer, Service of Process in China, ABA Section of Litigation 2012 Section Annual Conference, ABA Chinese Drywall Panel, at 2 (April 18-20, 2012) (with reference to service of process in China:  The papers to be served must first be presented to the Chinese Central Authority, which then is supposed to transmit the documents to local authorities for service upon the individual defendant. This takes time. Lots of it."); see also Jennifer Scullion, Adam T. Berkowitz, & Charles Sanders McNew, International Litigation: Serving Process Outside the US, Practical Law (2011) ( The Hague Conference advises that most Central Authorities can accomplish service within two months.  However, as a practical matter, the process can take as many as six months to effect service and return proof of service to the requesting party.").

*Brands LLC v. Bayer Healthcare LLC*, No. 19 Civ. 4312, 2020 U.S. Dist. LEXIS 109919, at *5 (N.D. Cal. June 23, 2020) ("delays to service via the Hague Convention may arise due to COVID-19 pandemic [thus] permitting renewal of alternative service motion.").  The Advisory Committee Notes to the 1993 Amendments to Rule 4(f) state "that in cases of 'urgency, 'Rule 4(f)(3) may allow the district court to order a 'special method of service, 'even if other methods of service remain incomplete or unattempted." *Rio Props. v. Rio Int'l Interlink*, 284 F.3d 1007, 1014 (9th Cir. 2002) (quoting Advisory Committee Notes to the 1993 Amendments to Rule 4(f)).

In *Microsoft Corp. v. Goldah.Com Network Tech Co.*, the Court noted that the situation described in Microsoft's motion for expedited discovery, temporary restraining order, and authorization for electronic service of process was "urgent enough to warrant service under Rule 4(f)(3)." 17-cv-02896-LHK, 2017 U.S. Dist. LEXIS 168537, *11- *12 (N.D. Cal. Oct. 11, 2017). Namely because Microsoft, like Plaintiff herein, stated that it had reason to believe the defendants would "funnel proceeds of their fraud through PayPal to foreign bank accounts held in China…[and] as soon as Defendants learn about the existence of the lawsuit, they will repatriate all of their assets currently held in the United States to China to prevent them from being made available to satisfy an award for Microsoft in this case." *Id*.

Ultimately, service on Defendant by email comports with due process, as it is "reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 309 (1950). Therefore, Plaintiff respectfully submit that an order authorizing alternative service benefits all parties and the Court by ensuring that Defendants receive immediate notice of the pendency of this action to move forward expeditiously.

**E.**     **PLAINTIFF IS ENTITLED TO AN ORDER AUTHORIZING EXPEDITED DISCOVERY**

Plaintiff respectfully requests that the Court order expedited discovery from Defendants, Financial Institutions and Third Party Service Providers regarding the scope and extent of Defendant's infringing activities, as well as Defendants' accounts details and other information relating to Defendants' Financial Accounts, Assets and/or any and all User Accounts and or Financial Accounts with the Third Party Service Providers, including, without limitation any and all websites, the Besign Amazon Storefront, including, without limitation, those owned and operated, directly or indirectly, by the Third Party Service Providers and the Financial Institutions.

Generally, a party may not seek discovery prior to a Rule 26(f) conference unless authorized by a court order. Fed. R. Civ. P. 26(d)(1). In the past, Courts in this District have often applied a four-factor test to determine when expedited discovery may be granted, but now apply a more flexible "good cause" test to examine "the discovery request . . . on the entirety of the record to date and the reasonableness of the request in light of all the surrounding circumstances." *Ayyash v. Bank Al-Madina*, 233 F.R.D. 325, 326 (S.D.N.Y. 2005) (internal citation omitted). Regardless of which test, Plaintiffs have established that they are entitled to the expedited discovery requested for good cause shown.  See *Id*. at 327.

Plaintiff also respectfully submits that the Court issue an order authorizing Plaintiffs to serve the Financial Institutions and/or Third-Party Service Providers with notice of the Court's order via electronic means prior to serving Defendant and with enough time for the Financial Institutions and/or Third Party Service Providers to comply with the Court's order to help expedite the process.

**F.     PLAINTIFF'S REQUEST FOR A SECURITY BOND IN THE AMOUNT OF $500 IS ADEQUATE**

In determining the amount of the bond that a moving party must post, this Court is "vested with wide discretion." *Doctor's Assocs., Inc. v. Stuart*, 85 F.3d 975, 985 (2d Cir. 1996). Plaintiff respectfully submit the provision of security in the amount of $500.00 is sufficient. *Cuiping Zhou v. Tchh-Dayup et. al.*, No. 22-cv-06958-KPF (S.D.N.Y. August 16, 2022). Moreover, courts of this Circuit have gone as far as to hold that no security bond is necessary in similar circumstances.  See *Mattel, Inc. v. 86755*, et al., No. 18-cv-8825-RJS-JSR (S.D.N.Y. Oct. 4, 2018) (The Hon. Richard J. Sullivan held that no security bond was necessary because "it strikes me almost as fairly arbitrary.")


**IV.     CONCLUSION**

For the reasons set forth above, Plaintiff respectfully request that its Application be granted *ex parte* in its entirety.

Dated: December 5, 2022
Queens, New York

Respectfully submitted,

J. Zhang and Associates, P.C.

*/s/ Jiyuan Zhang*
Jiyuan Zhang, Esq (5707401)
136-20 38th Avenue, Ste 11G
Flushing, NY 11354
T 607-948-3339
F 917-341-7980
contact@jzhanglaws.com

***Attorney for Plaintiff***